IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-01133-PAB-SKC

PATTI A. HARTMAN,

 Plaintiff,

v.

HARRISON SCHOOL DISTRICT TWO and
HARRISON SCHOOL DISTRICT TWO BOARD OF EDUCATION,

 Defendants.
_____

# ORDER
_____

  This matter is before the Court on defendants' Motion for Summary Judgment [Docket No. 39] and Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendants' Motion for Summary Judgment [Docket No. 44]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND [1]

  Defendant Harrison School District Two ("District") employed plaintiff as an assistant principal at Sierra High School ("Sierra") in El Paso County, Colorado in the 2013-14 and 2014-15 school years. Docket No. 39 at 4, ¶ 1; Docket No. 40 at 7, ¶ 1. Dr. Aaron Griffen ("Griffen") was Sierra's principal and plaintiff's direct supervisor during the 2014-15 school year, replacing her previous supervisor, Zach Craddock. Docket No. 39 at 4, ¶ 2; Docket No. 40 at 7, ¶ 1. During that school year, plaintiff worked on a

---

[1] The following facts are undisputed unless noted otherwise.

one-year contract running from July 22, 2014 until June 26, 2015. Docket No. 39 at 4, ¶ 1.

On November 4, 2014, plaintiff suffered injuries to her head, right ankle, and left shoulder when she responded to a physical altercation involving two students and a security officer. *Id*. at 5, ¶¶ 9-10. As a result of her injuries, plaintiff missed work intermittently in November 2014. *Id*. at 6-7, ¶¶ 11, 13. She also missed some days in January 2015. *Id*. at 7, ¶ 17.[2]

On January 14, 2015, Griffen met with plaintiff to discuss his intent to place her on a "Growth Improvement Plan." *Id*., ¶ 16. The two met again on February 9, 2015, at which point plaintiff signed the plan. *Id*., ¶ 18. At this meeting, plaintiff informed Griffen that she would be submitting a formal application for leave under the Family Medical Leave Act ("FMLA") and consequently would not be able to attend some of the meetings scheduled in the Growth Improvement Plan. *Id*., ¶ 19.[3]

On February 9, 2015, plaintiff formally requested FMLA leave, to run from February 11 to April 9, 2015. Docket No. 39 at 8, ¶ 20.[4] The District and Griffen approved her request on February 13, 2015. *Id*. As plaintiff did not have enough paid

---

[2] Plaintiff disputes the exact dates she missed work in January 2015. Docket No. 40 at 4, ¶ 17.

[3] Plaintiff states that she also informed Griffen that she would need medical leave at a meeting on January 7, 2015. Docket No. 40 at 4, ¶ 19. Defendants dispute this, stating that plaintiff did not know before a conversation with District staff on January 27, 2015 that she could take a leave of absence. Docket No. 41 at 3, ¶ 19.

[4] Plaintiff offers the "clarification" that she was to return to work on April 13, 2015. Docket No. 40 at 4, ¶ 20. Plaintiff's leave of absence application shows a "leave end date" of April 9, 2015, and a "return to work date" of April 13, 2015. Docket No. 39-6.

days of medical leave available to cover her entire FMLA leave, she requested ten days of "Compassionate Leave" from defendants. Docket No. 40 at 7-8, ¶¶ 4, 7. Compassionate Leave is a District program that allows other employees to donate their paid leave days to an employee who is out of paid leave days. *Id*. at 8, ¶ 6. On March 9, 2015, the District informed plaintiff that her request for ten Compassionate Leave days was granted and that requests for Compassionate Leave donations on plaintiff's behalf would go out to Sierra and, by March 20, 2015, to the entire District. *Id*., ¶ 8. Griffen did not send a request for donations to Sierra or the District. *Id*. at 9, ¶¶ 10-11. On March 20, 2015, plaintiff returned from FMLA leave early because she had run out of paid leave days and could not take unpaid leave for financial reasons. Docket No. 39 at 9, ¶¶ 25-26; Docket No. 40 at 9, ¶ 12.

On May 1, 2015, the District informed plaintiff that it would not renew her contract for the upcoming year. Docket No. 39 at 10, ¶ 33. The District later transferred plaintiff to an elementary school for the remainder of her contract. *Id*., ¶ 34.

Plaintiff filed this lawsuit on May 8, 2017. Docket No. 1. Plaintiff asserts causes of action under the FMLA, 29 U.S.C. § 2601 *et seq*., for interference with substantive rights and for retaliation. *Id*. at 7-9, ¶¶ 38-53.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if

under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Defendants move for summary judgment on plaintiff's claims for interference and retaliation under the FMLA, 29 U.S.C. § 2601 *et seq*. Docket No. 39 at 11-17.[5]

### A. FMLA Interference

In her first claim, plaintiff alleges that Griffen and District-level administrators interfered with her ability to take FMLA leave by failing to forward her request for Compassionate Leave donations to Sierra and District employees. Docket No. 50 at 2-3. As a result, plaintiff states that she was "fac[ing] the unsettling possibility of spending weeks on unpaid medical leave." *Id*. at 2.

The FMLA entitles eligible employees to "up to twelve weeks of unpaid leave . . . for serious health conditions and reinstatement to the former position or an equivalent one upon return from that leave." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006); *see also* 29 U.S.C. § 2612(a)(1)(D) (providing that an eligible employee may take leave for a "serious health condition that makes the employee unable to perform the functions of [his or her] position"). An employer is prohibited from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided" under the Act. 29 U.S.C. § 2615(a)(1). An employer is not, however, required "to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave." 29 U.S.C. § 2612(d)(2)(B). To prevail on a claim for FMLA interference, a plaintiff must

---

[5] The Court will rule separately on defendants' argument that plaintiff's claims against defendant Harrison School District Two Board of Education ("Board") should be dismissed because they are duplicative of its claims against the District. *See* Docket No. 39 at 11.

show "(1) that he or she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his or her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights." *Metzler*, 464 F.3d at 1180.

Defendants argue that they are entitled to summary judgment because plaintiff cannot show that defendants interfered with her right to take FMLA leave. *See* Docket No. 39 at 12-13. To demonstrate interference, plaintiff "must show that she was prevented from taking the full 12 weeks[] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). The undisputed facts show that the District approved plaintiff's application for FMLA leave and that Griffen approved plaintiff's absence from Sierra. Docket No. 39 at 8, ¶ 20. Plaintiff did not take the full leave that she had requested and been approved for; she returned early because she had run out of paid leave. *Id*. at 9, ¶ 26. There is no showing, and plaintiff does not argue, that defendants prevented plaintiff from taking leave or denied her permission to take FMLA leave.

Instead, plaintiff argues that defendants interfered with her right to take FMLA leave by not sending out requests for "Compassionate Leave" to defendants' employees. *See* Docket No. 40 at 11-12. It is undisputed that plaintiff requested ten days of Compassionate Leave in her initial FMLA application on February 9, that defendants informed plaintiff that her request would be granted on March 9, and that defendants failed to send an email to either Sierra or District employees asking for

Compassionate Leave donations before plaintiff returned to work early on March 20. *Id*. at 8-9, ¶¶ 7-11. A claim for interference, however, requires plaintiff to show that defendants interfered with the "substantive rights" guaranteed by the FMLA. *See Metzler*, 464 F.3d at 1180 (emphasis added); *see also Drago v. Jenne*, 453 F.3d 1301, 1306 (11th Cir. 2006) ("To state a[n] FMLA interference claim, a plaintiff must demonstrate that [she] was entitled, under the FMLA, to a benefit that [she] was denied."). The core of plaintiff's claim is that defendants interfered with her right to "tak[e] the full leave she needed." *See* Docket No. 40 at 12; Docket No. 50 at 2-3. However, under the FMLA, plaintiff only has the right to 12 weeks of *unpaid* leave in the event of a serious health condition. *See* 29 U.S.C. § 2612(a)(1)(D). Even though defendants did not request Compassionate Leave on her behalf, defendants nevertheless gave plaintiff permission to take the 12 weeks of unpaid sick leave that the FMLA guarantees. *See* Docket No. 39 at 8, ¶ 20. Plaintiff cites no authority to support the argument that defendants' failure to transmit a request for optional donations of paid sick days to other employees on plaintiff's behalf is an adverse action that interferes with plaintiff's FMLA right to unpaid sick leave. Defendants were not required to provide paid sick leave in a situation where they would not normally provide it. *See* 29 U.S.C. § 2615(a)(1).

As plaintiff points to no other adverse action taken by defendants that interfered with her FMLA rights, her interference claim fails. *See Metzler*, 464 F.3d at 1180. Accordingly, the Court will grant summary judgment for defendants on plaintiff's claim for FMLA interference.

### B. FMLA Retaliation

In her second claim, plaintiff alleges that defendants subjected her to a retaliatory course of action following her request for FMLA leave. Docket No. 50 at 3. Plaintiff alleges that Griffen placed her on a Growth Improvement Plan before she started FMLA leave and then decided just days after she returned from leave – well in advance of the end of the plan – that her contract would not be renewed. *Id*.

The FMLA prohibits employers from discriminating against "any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). A claim that an employer has violated § 2615(a)(2) is a retaliation claim. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002). Retaliation claims under the FMLA are considered under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003). "Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation." *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). If the plaintiff successfully establishes her prima facie case, the defendant must offer a legitimate, non-retaliatory reason for the employment action. *Id*. "The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Id*. (citation omitted).

#### 1. Prima Facie Case of Retaliation

To state a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) the employer took an action that a reasonable

employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Metzler*, 464 F.3d at 1171. Plaintiff engaged in a protected activity by requesting FMLA leave. *See* Docket No. 39 at 8, ¶ 20. After returning from leave on March 20, 2015, defendants informed plaintiff on May 1, 2015 that they would not renew her employment contract for the next school year. *See id*. at 10, ¶ 33. Defendants do not dispute that plaintiff has satisfied the first two elements. *See* Docket No. 39 at 15-17.[6] Accordingly, plaintiff has shown the first two elements of a prima facie case of retaliation.

"To establish the third element . . . [plaintiff] must show a causal connection between her protected activity of taking FMLA leave and [employer's] decision to terminate her employment." *Metzler*, 464 F.3d at 1171. At the prima facie case stage, the inquiry is "whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination." *Id*. (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002)). An inference of retaliatory motive can be shown by "protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982). "[T]he closer [the adverse action] occurred to the protected

---

[6] The parties refer to the adverse action in this case as either a "termination" or non-renewal of plaintiff's contract. *Compare* Docket No. 50 at 3 *with* Docket No. 39 at 10, ¶ 33. At least one court has found that non-renewal of an assistant principal's contract is a materially adverse employment action for an FMLA retaliation claim. *See Caldwell v. Clayton Cty. School Dist.*, 604 F. App'x 855, 860 (11th Cir. 2015) (unpublished) ("It is undisputed that [plaintiff] . . . suffered an adverse employment decision in the form of the non-renewal decision."). Because the parties do not dispute that plaintiff suffered a materially adverse employment action, the Court will also assume that she did.

9

activity, the more likely it will support a showing of causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). "A six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004).

Here, plaintiff returned from FMLA leave on March 20, 2015. *See* Docket No. 40 at 9, ¶ 12. Plaintiff alleges that Griffen decided to terminate plaintiff on or before April 9, 2015. *See id*. at 6, ¶ 32.[7] Defendants informed plaintiff that her contract would not be renewed on May 1, 2015. *See* Docket No. 39 at 10, ¶ 33. Whether the gap between plaintiff's return from leave and the adverse action was two weeks or six weeks, the Court concludes that plaintiff has demonstrated a sufficient inference of retaliatory motive to establish her prima facie case. *See Meiners*, 359 F.3d at 1231; *Barcikowski v. Sun Microsystems, Inc.*, 420 F. Supp. 2d 1163, 1185 (D. Colo. 2006) (finding that an approximate one-month time lapse between return from FMLA leave and termination satisfies plaintiff's burden to show a causal connection).

### 2. *Legitimate, Nonretaliatory Reason for Termination*

Because plaintiff has established a prima facie case of FMLA retaliation, the burden under *McDonnell Douglas* shifts to defendants to demonstrate a legitimate,

---

[7] Plaintiff makes this assertion in response to defendants' statement of undisputed material facts. *See* Docket No. 39 at 10, ¶ 32; Docket No. 40 at 6, ¶ 32. Because the assertion is not directly relevant to whether plaintiff admitted or denied defendants' assertion, defendants had no obligation to respond. *See* Fed. R. Civ. P. 56; Practice Standards III(F)(3)(vi). However, defendants did respond, indicating that the timing of Griffen's recommendation is "immaterial." *See* Docket No. 41 at 5, ¶ 32. Under the circumstances, the Court finds that this fact is undisputed.

nonretaliatory reason for its decision to terminate plaintiff. *See Doebele*, 342 F.3d at 1135. Defendants assert that they fired plaintiff due to her failure to successfully complete her work responsibilities and her failure to perform the duties outlined in her Growth Improvement Plan. *See* Docket No. 39 at 10, ¶ 32. Neither of these reasons for terminating plaintiff is facially prohibited. Defendants have thus articulated legitimate, non-retaliatory reasons for terminating plaintiff's employment.

### 3. Pretext

To defeat summary judgment, plaintiff must show that there is a genuine dispute of material fact as to whether defendant's explanations for terminating her employment are pretextual. *See Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1318 (10th Cir. 2006); *Metzler*, 464 F.3d at 1172. "A plaintiff can demonstrate pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's reasons for its action, which a reasonable factfinder could rationally find unworthy of credence." *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (internal citations and quotations omitted). "A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false, (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances, or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (internal citations omitted).

Plaintiff identifies disputed material facts that would indicate that defendants' stated reasons for firing her were pretextual. Defendants state that they fired plaintiff because she failed to perform the duties outlined in her Growth Improvement Plan. To dispute this, plaintiff asserts that Griffen made the decision to fire her on April 9, 2015, before the Growth Improvement Plan was completed. Docket No. 40 at 16. In Griffen's deposition, he testified that he determined that plaintiff was going to fail the Growth Improvement Plan by "early April." Docket No 40-1 at 10, p.140:6-18. Moreover, in an email to District staff on April 9, Griffen described plaintiff as a "potential non-renew."; Docket No. 40-12 at 1. Defendants claim that Griffen's recommendation not to renew plaintiff's contract before her completion of the Growth Improvement Plan is "immaterial." Docket No. 41 at 5, ¶ 32. However, the date Griffen recommended that plaintiff's contract not be renewed is material because it calls into question whether one of defendants' stated reasons for terminating plaintiff – failure to perform the duties outlined in her Growth Improvement Plan – is pretextual. Assuming that the plan was designed to improve plaintiff's job performance, and that its length was calculated to provide the time necessary to accomplish that goal, a reasonable factfinder could conclude that defendants decided to terminate plaintiff for reasons unrelated to her job performance, such as the exercise of her FMLA rights. *See DeCicco v. Mid-Atlantic Healthcare, LLC*, 275 F. Supp. 3d 546, 561 (E.D. Pa. 2017) (where a plaintiff requests FMLA leave, is placed on a two-week performance improvement plan one day later,

and is fired one day after being placed on the plan, a reasonable jury could conclude that defendant's proffered reasons for plaintiff's termination are pretextual).[8]

Defendants also state that they fired plaintiff because of failure to successfully complete her work responsibilities, which included issues with scheduling student testing in fall 2014 and spring 2015.  Docket No. 39 at 16.  Plaintiff disputes that she had issues with scheduling the fall 2014 CBM testing and disputes that she failed to meet deadlines related to the spring 2015 ACT testing.  *Id*. at 16.  Plaintiff also states that her history of positive performance reviews contradicts defendants' statements about her poor performance.  *Id*. at 19-20.

Defendants point to the fall 2014 CBM testing as a performance issue that led to plaintiff's termination.  *See* Docket No. 39 at 15-16.  Defendants claim that plaintiff failed to create a timely schedule for the CBM testing, which was due by October 2014.  Docket No. 39 at 4, ¶ 5.  As a result, Sierra experienced a "testing irregularity" when the CBM testing was administered.  *Id*. at 5, ¶ 6.  Plaintiff, however, points to evidence in

---

[8] Plaintiff filed a Motion for Leave to File Sur-Reply [Docket No. 44] in response to defendants' reply brief.  Granting leave to file a surreply is part of the supervision of litigation and thus falls within the discretion of the district court.  However, the Court must allow a non-movant to file a surreply to respond to any new arguments in the moving party's reply.  *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191-92 (10th Cir. 2006) ("[I]f the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to these new materials." (internal citations omitted)).  Plaintiff contends that defendants' reply brief raises the new argument that "the involvement of an independent decision-maker, Superintendent Dr. Andre Spencer, absolves them of liability" on plaintiff's FMLA retaliation claim.  Docket No. 44 at 1, ¶ 2.  Defendants respond that plaintiff mischaracterizes their argument, and that they are not using Dr. Spencer's involvement in the nonrenewal of plaintiff's contract to deny causation.  Docket No. 45 at 2-3, ¶¶ 3-6.  With that understanding, the Court will deny Plaintiff's Motion for Leave to File Sur-Reply [Docket No. 44], as defendants have not raised a new argument that requires the Court to allow plaintiff to respond.

13

the record that tells a different story. She disputes that she was solely responsible for the schedule, that it was due in October 2014, that she delayed the final schedule, and that there were testing irregularities that fall. Docket No. 40 at 1-2, ¶¶ 5-6. Plaintiff supports her characterization with excerpts from Griffen's deposition, the deposition of fellow assistant principal Jymil Thompson, her own affidavit, and documentary evidence. *See* Docket No. 40 at 1-2, ¶¶ 5-6. The Court finds that plaintiff has identified a disputed issue of material fact as to whether this reason to terminate plaintiff is pretextual.

The parties dispute whether or not plaintiff failed to create a "timely, appropriate testing schedule" for the spring 2015 ACT testing and whether plaintiff failed to meet any of the Growth Improvement Plan goals when she returned to work. *Compare* Docket No. 39 at 10, ¶ 28-30 *with* Docket No. 40 at 5-6, ¶¶ 28-30. For example, plaintiff states, and defendants do not dispute, that Griffen "did not assign anyone else the task of scheduling the ACT test while Hartman was on FMLA leave" – a task which "took weeks to finish." *See* Docket No. 40 at 9, ¶ 13. Viewed in the light most favorable to plaintiff, this suggests that Griffen set plaintiff up to fail by assigning her a task that he knew she could not complete, thus establishing a pretext for her termination.

These disputed facts are material because a reasonable factfinder could review the evidence and determine that defendants' stated reason for firing plaintiff – poor job performance – was false. The Tenth Circuit has concluded that a plaintiff can survive summary judgment when there is "clearly conflicting evidence in [the] record showing that genuine questions of fact remain on the material issues whether [defendant's] proffered reason . . . was pretextual." *See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373,

1380-81 (10th Cir. 1994); see also Kendrick, 220 F.3d at 1230 (plaintiff can withstand summary judgment through "evidence that the defendant's stated reason for the adverse employment action was false").

As plaintiff has shown genuine disputes of material fact as to whether defendants' explanations for terminating her employment are pretextual, the Court will deny summary judgment for defendants on plaintiff's claim for FMLA retaliation. See Mickelson, 460 F.3d at 1318.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Leave to File Sur-Reply [Docket No. 44] is **DENIED**. It is further

**ORDERED** that defendants' Motion for Summary Judgment [Docket No. 39] is **GRANTED IN PART** and **DENIED IN PART**.

DATED January 9, 2019.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge